# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **PIERRE SOLIDE, individually and behalf of all others similarly situated,** | **Case No: 6:23-cv-1932-PGB-DCI** |
| **Plaintiff,** | **SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |
| **v.** | |
| **VISION SOLAR, LLC, and VISION SOLAR FL, LLC,** | |
| **Defendants.** | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Pierre Solide ("Plaintiff"), individually and on behalf of the other members of the Nationwide Class ("the Class") file this Second Amended Class Action Complaint ("the Complaint") against Defendants Vision Solar, LLC and Vision Solar FL, LLC ("Vision Solar" or "Defendants"), and allege as follows:

## INTRODUCTION

1. Plaintiff brings this class action arising from Defendants' operation of a business that purports to provide homeowners with the sale and installation of home solar energy systems, but which fails to deliver any meaningful service or product.

2. Vision Solar's business model is to target vulnerable neighborhoods and consumers with poorly trained and unqualified salespeople, marketing the

Vision Solar business as providing significant energy savings through the sale of home solar systems (the "Systems"). These salesmen go door-to-door with relentless, high-pressure sales tactics, promising a low-risk investment that will save homeowners thousands of dollars in energy savings a year.

3.      In most instances, Vision Solar's solar Systems are financed to the consumer through third-party financing companies. The financing arrangements between Vision Solar and the financing companies allowed Vision to receive payment for the total amount of the financing contract as soon as the solar panels were installed on the property, *regardless* of whether the Systems were functional and generating solar energy.

4.      This incentivized Vision Solar to install the Systems as quickly as possible, often prior to completing any due diligence on the property or applying or receiving required building and electrical permits.

5.      The result of this business scheme left thousands of homeowners with worthless solar panels installed on their properties that are unable to pass permitting inspections and generate power, coupled with expensive financing contracts and absolutely no generation of solar energy or any promised energy savings.

6.      Plaintiff and the putative Class have suffered extensive and devastating damages as a result of this misleading business scheme.

## BACKGROUND

### The solar energy industry is fraught with egregious wrongful conduct resulting in harmed consumers with no recourse.

7.     A year-long investigation into the solar industry by consumer watchdog group Campaign for Accountability ("CfA") revealed:

> Unscrupulous actors have exploited vulnerable populations, preying on the elderly and those on fixed-incomes.  Companies have misled consumers about the true costs of installing solar panels, provided shoddy craftsmanship, and left homeowners with higher utility costs, all while forcing them to sign unconscionable contracts that leave little possibility of recourse.[1]

8.     The CfA report further found:

> American consumers identified numerous companies that provided poor or inadequate service, falsely represented the savings the customers would realize from solar power, lured them in with low price quotes that later proved to be false, required them to sign confusing contracts, and/or performed shoddy installation of the solar panels.[2]

9.     In a Federal Trade Commission workshop focused on the solar energy industry, the Consumers Union reported that consumers are facing challenges that include "dealing with bad actors, and those are things like fraud, misrepresentation…"[3]

---

[1] *What Consumer Complaints Reveal about the Solar Industry*, Campaign for Accountability, https://campaignforaccountability.org/work/what-consumer-complaints-reveal-about-the-solar-industry/ (Last visited September 28, 2023).

[2] *Id.*

[3] *Something New Under the Sun:  Competition & Consumer Protection Issues in Solar Energy*, Federal Trade Commission Solar Energy Workshop, p. 4, https://www.ftc.gov/system/files/documents/videos/something-new-under-sun-competition-consumer-protection-issues-solar-energy-workshop-part-4/ftc_solar_energy_workshop_-_transcript_segment_4.pdf (Last visited September 28, 2023).

3

10.   On January 31, 2023, WPEC CBS12 News in West Palm Beach reported on Vision Solar "starting solar projects, then walking away without connecting the panels to the grid, or securing the proper permits."[4]

11.   The WPEC CBS12 News story further reported that Vision Solar installed a solar energy system for a Deerfield Beach homeowner in August 2021, but the system had never been turned on or connected to the power grid because Vision Solar had not obtained the proper permits.[5]

12.   The WPEC CBS12 News story also reported that a Boca Raton homeowner had paid $40,000 to Vision Solar for a solar energy system that had not been turned on a year and a half after installation because Vision Solar had failed to obtain the proper permits, "making his installation illegal."[6]

13.   Palm Beach Building Official Doug Wise commented on the story:

"It's competitive advantage…They can sell the job and walk away. The problem is the homeowner ends up holding the bag particularly when there aren't permits."[7]

14.   On June 14, 2023, USA Today reported that Vision Solar had defrauded thousands by failing to obtain the proper permits before installing panels, resulting in homeowners paying for solar energy systems that are not connected to

---

[4] *I-Team: Customers stuck paying for non-working, unpermitted solar panel,*
https://cbs12.com/news/local/i-team-vision-solar-panels-permits-south-florida-deerfield-beach-scam-1-31-2023 (Last visited September 28, 2023).
[5] *Id.*
[6] *Id.*
[7] *Id.*

the power grid.[8]

15.     The aforementioned consumer watchdog reports, government agency forum, and news media coverage are a fraction of the information evidencing an epidemic across Florida and the U.S. involving solar companies, including Vision Solar, breaching contracts and defrauding consumers.

**<u>Defendants' wrongful conduct has been uniformly directed toward a class of nationwide individuals.</u>**

16.     Defendants' wrongful conduct is systemic, continuous, and repetitive, and Defendants have uniformly directed their wrongful conduct toward a Nationwide Class.

17.     The Better Business Bureau has given Defendants 1.2 stars out of 5 stars, and an "F" rating:



---

[8]*New Jersey solar company allegedly pressured vulnerable populations into contracts for 'a shoddy product'*, USA Today, https://www.usatoday.com/story/money/2023/04/10/vision-solar-panel-lawsuit/11600307002/ (Last visited September 28, 2023).

18.     In addition, the Better Business Bureau website shows 645 complaints against Defendants in the last 3 years, with 361 complaints in the last 12 months:

## Customer Complaints

**645** complaints closed in last 3 years

**361** complaints closed in last 12 months

**Read Complaints**

19.     On the Better Business Bureau website, hundreds of putative Class Members have posted complaints evidencing that Defendants systemically, repeatedly, and continually misrepresented the benefits of Defendants' solar Systems, failed to timely apply for or obtain necessary permits, and failed to install PV systems that are operable and produce energy.

## PARTIES

**Plaintiff**

20.     Plaintiff Pierre Solide ("Solide" or "Plaintiff") is a citizen of Florida and resident of Orlando, Orange County, Florida.

21.     As set forth above, Plaintiff contracted with Defendants in July 2021 to install a PV system that has remained inoperable.

**Defendant**

22.    Defendant Vision Solar, LLC is a New Jersey corporation with a principal place of business located at 501 Route 168, Blackwood, New Jersey 08012.

23.    Defendant Vision Solar FL, LLC is a New Jersey corporation with a principal place of business located at 501 Route 168, Blackwood, New Jersey 08012 and a registered agent located at API Processing – Licensing, Inc., 3419 Galt Ocean Dr., Suite A, Fort Lauderdale, Florida 33308.

24.    Defendants Vision Solar, LLC and Vision Solar FL, LLC will be collectively referred to as "Vision Solar" or "Defendants".

25.    Vision Solar is a solar energy company that represents itself as having "a team of expert installers and premier customer service" for the installation of solar panels on residential homes in Arizona, Connecticut, Florida, Massachusetts, Pennsylvania, Texas, and New Jersey.[9]

## JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is of diverse citizenship from Defendants, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

27.    This Court has personal jurisdiction over Defendants because Defendants' contacts with the State of Florida are systematic, continuous, and

---

[9] *Vision Solar home page*, https://visionsolar.com/ (Last visited September 28, 2023).

sufficient to subject it to personal jurisdiction in this Court. Specifically, Defendants purposefully availed themselves of the privilege of conducting business in the forum state by advertising and selling solar energy systems within the forum state. Additionally, Defendants have maintained systematic and continuous business contacts within the forum and are registered to conduct business in the State.

28.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this District. Defendants have marketed, advertised, and sold PV systems and otherwise conducted extensive business within this District.

29.    Plaintiff Pierre Solide, as well as many other Class Members, purchased their PV systems from Defendants' agents and offices located in this District.

## GENERAL ALLEGATIONS

30.    At all relevant times, Defendants offered its services as a residential solar panel installation company.

31.    Defendants held themselves out as an affordable solar company whose products and services allow consumers to save money on electricity costs by generating solar energy.

32.    Defendants sold their product and services through form contracts for the sale and installation of solar energy Systems. The contracts used by Defendants

during the Class Period included uniform and standardized contract provisions that are applicable to all Class Members.

33.    Due to the high cost of solar panel installations, most consumers enter multi-year loans or other financing arrangements with third-party lenders. Defendants would select the lenders for this purpose, all to the benefit of Vision Solar.

34.    Vision Solar is financially incentivized to sell as many solar Systems as possible. Defendants receive 100% of the contract price from their financing company partners without any proof that the Systems are functional, permitted, or operable.

35.    Defendants utilize scripted and high-pressure sales tactics that include verbal promises that the solar energy produced by the Systems would replace the homeowner's electrical costs, and that the monthly cost of the financing agreements would be significantly less than the consumers' monthly electrical bills, resulting in thousands of dollars in energy savings a year.

36.    Defendants' scripted sales pitches include numerous fraudulent misrepresentations, including, but not limited to:

a. Misrepresenting the output of solar energy a System was capable of generating;
b. Misrepresenting that Systems would "pay for themselves" through solar energy savings;
c. Misrepresenting the extent and value of federal or state tax credits or incentives for the installation of solar energy Systems;

d. Misrepresenting the status of required permitting applications and processes.

37.    Defendants' high-pressure marketing and sales tactics cause or influence consumers to execute lengthy and expensive solar contracts, often pressuring consumers to "sign" contracts the same day as the initial sales solicitation.

38.    Once the Systems were installed, Defendants would receive the full amount of the contract price from the financing company as payment.

39.    In many instances, the Systems were installed prior to application or obtainment of required local permits.

40.    The resulting systems were completely inoperable, leaving homeowners with the full cost of their electricity bills as well as monthly financing obligations to the third-party financing companies.

41.    Having already received full payments from the financing companies, Defendants repeatedly and consistently failed to respond to consumer complaints and requests to address the problems with their business practices, leaving homeowners with inoperable solar panels, roof damage, expensive financing obligations, and absolutely no recourse.

## PLAINTIFF SOLIDE'S ALLEGATIONS

42.    On July 10, 2021, Plaintiff contracted with Defendants for the purchase of 8.16 kW solar energy system or photovoltaic system ("PV system") consisting of

23 Longi solar panels or photovoltaic panels ("PV panels") for $30,864.00 pursuant to a Residential Sales Agreement ("the Agreement"). (Exhibit 1).

43.   Pursuant to the Agreement, Vision Solar promised to install the PV System and promised to perform the following services:

- Complete photovoltaic ("PV") design (Signed/Sealed Drawings).
- Complete electrical power distribution and interconnection design (Signed/Sealed Drawings)
- Complete structural analysis and design (Signed/Sealed Drawings).
- All necessary construction liability insurances explicitly pertaining to our scope of work by Vision Solar.
- A full-time dedicated Vision Solar project engineer is included.
- A full-time dedicated Vision Solar on site project manager is included.
- All necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and
- New Jersey Clean Energy Program filings or related filings.
- All necessary solar components as listed in this Agreement including supply and installation.

44.   All work performed by Vision Solar will be done in accordance with local, state, and national building and electrical codes.

9.   All work performed by Vision Solar will be done in accordance with local, state, and national electrical codes.

45.   The Agreement provided that Defendants would be responsible for obtaining all permits to install the system:

3.3.   Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein.

46.    Vision Solar induced Plaintiff Solide into purchasing the System by systematically misrepresenting material and foundational aspects of the agreements, including, but not limited to, representing that:

- Vision Solar would obtain all required permits prior to installation;
- The System would "pay for itself" by reducing the amount of power used by Plaintiff's current power company.

47.    In addition, Vision Solar employed unfair, high-pressure tactics to coerce Plaintiff into agreeing to purchase and finance the solar System, including, but not limited to:

- Soliciting Plaintiff at home, unannounced;
- Pressuring Plaintiff to sign up the same day as the in-home inspection;
- Presenting the purchase and financing agreements on a mobile device with inadequate ability to review the contractual documents.

48.    Defendants installed Plaintiff's PV system on July 22, 2021.

49.    Defendants had not submitted *any* applications for required building or electrical permits prior to the installation of Plaintiff's system.

50.    To date, Plaintiff's System has not produced *any* solar energy.

51.    Plaintiff has continued to pay for electricity from the power company as well as make payments to the third-party financing company.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

### **Discovery Rule Tolling**

52.    Plaintiff and Class Members could not have discovered through

reasonable diligence that Defendants failed to install PV systems according to electrical codes.

53.   Plaintiff and Class Members could not have discovered through reasonable diligence that Defendants failed to obtain the necessary permits for installing PV systems.

54.   Plaintiff and Class Members could not have discovered through reasonable diligence that Defendants failed to install PV systems that are operable and produce energy.

55.   Therefore, Plaintiff's claims and the claims of all Class Members did not accrue until they discovered Defendants' wrongful conduct.

**Fraudulent Concealment Tolling**

56.   Throughout the time period relevant to this action, Defendants concealed and failed to disclose to Plaintiff and Class Members vital information about Defendants 1) failing to install PV systems according to electrical codes; 2) failing to obtain the necessary permits for installing PV systems; and/or 3) failing to install PV systems that are operable and produce energy.

57.   Defendants kept Plaintiff and Class Members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiff nor the other Class Members could have discovered Defendants' false representations and omissions, even upon reasonable exercise of diligence.

58.     Prior to the date of this Complaint, Defendants knew their misrepresentations and omissions withheld vital information, but continued to make misrepresentations about material facts, or concealed material facts, from Plaintiff and the Class.

59.     In doing so, Defendants concealed from or failed to notify Plaintiff and Class Members about the false and deceptive nature of Defendants' misrepresentations and omissions to induce Plaintiff and Class Members to contract with Defendants for the purchase and installation of PV systems.

60.     Plaintiff and Class Members justifiably relied on Defendants to disclose that Defendants 1) failed to install PV systems according to electrical codes; 2) failed to obtain the necessary permits for installing PV systems; and/or 3) failed to install PV systems that are operable and produce energy.

61.     Defendants' misrepresentations and omissions were not discoverable through reasonable efforts by Plaintiff and Class Members.

62.     Thus, the running of all applicable statutes of limitation has been tolled and suspended with respect to any claims that the Plaintiff and the other Class Members have sustained as a result of Defendants' misrepresentations and omissions by virtue of the fraudulent concealment doctrine.

**Estoppel**

63.     Defendants were under a continuous duty to disclose to Plaintiff and

Class Members that Defendants 1) failed to install PV systems according to electrical codes; 2) failed to obtain the necessary permits for installing PV systems; and/or 3) failed to install PV systems that are operable and produce energy.

64.    Defendants actively concealed these material facts from Plaintiff and Class Members.

65.    Plaintiff and Class Members reasonably relied upon Defendants knowing and actively concealing these material facts.

66.    Defendants are accordingly estopped from relying on any statute of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

67.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and on behalf of a Nationwide Class, defined as:

**Nationwide Class**

> All persons and entities within the United States who contracted with Defendants for the purchase and installation of solar PV systems and whose systems fail to produce solar energy power.

68.    Excluded from all Class are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a

15

controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiff and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff reserves the right to modify and/or add to the Nationwide prior to class certification.

**Fed. R. Civ. P. 23(a) Prerequisites**

69.    **Numerosity.** The Nationwide Class is so numerous that joinder of all members is impracticable.   Although the precise number of Class Members is unknown and is within the exclusive control of Defendants, upon information and belief, Defendants' wrongful conduct as set forth above was directed at thousands of Class Members in the United States, including hundreds in the State of Florida.

70.    **Commonality.**   The claims of Plaintiff and the Nationwide Class involve common questions of fact and law that will predominate over any individual issues.  These common questions include, but are not limited to:

a.    Whether Defendants engaged in a fraudulent and deceptive scheme to induce homeowners to agreeing to purchase solar energy Systems;

b.    Whether Defendants systematically misrepresented the benefits, including energy savings and tax benefits, associated with purchasing solar

energy Systems;

c.     Whether Defendants salespeople were trained to use fraudulent, deceptive, unfair, and misleading sales tactics;

d.     Whether Defendants breached their contractual obligations by failing to install Systems that were permitted and operable; and

e.     Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief and the measure of damages owed.

71.     **Typicality.**  Plaintiff's claims are typical of a Class Members' claims. Plaintiff and all Members of the Class were injured by Defendants' uniform misconduct. Plaintiff's claims and the defenses thereto are typical of all Members of the Class. Defendants injured Plaintiff and Members of the Class through uniform misconduct and Plaintiff's legal claims arise from the same core practices. Plaintiff suffered the same harm as all Members of the Class and Plaintiff's interest are identical to those of the Members of the Class. Thus, typically within the meaning of Rule 23(a)(3) is established.

72.     **Adequacy.**  Plaintiff will fully and adequately represent and protect the interests of the Nationwide Class because he shares common interests with Class Members as a result of Defendants' wrongful conduct.

73.     Plaintiff has retained counsel with experience in complex litigation.

74.    Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests adverse to those of the Class.

**Fed. R. Civ. P. 23(b) Prerequisites**

75.    Defendants have acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.

76.    **Predominance.**  Questions of law and fact common to the Nationwide Class, including those listed above, predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Resolution of the common issues in this litigation will resolve virtually the entirety of every Class Members' claims in a single stroke.  Individual damages can be readily calculated.  Thus, the question of individual damages will not predominate over legal and factual questions common to the Class.

77.    **Superiority.**  Defendants' wrongful conduct was directed at consumers uniformly as a Class.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff and Class Members have all suffered and will continue to suffer financial harm and damage as a result of Defendants' wrongful conduct, which was directed toward Members of the Class

as a whole, rather than specifically or uniquely against any individual Class Members.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' wrongful conduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without effective remedy.

78.    **Declaratory and Injunctive Relief.**  Class wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the Class.  Class wide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendants' discharge of their duties to perform corrective action regarding Defendants conduct.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**(Breach of Contract on behalf of the Nationwide Class)**

79.    Plaintiff incorporates by reference all material facts in this Complaint as fully set forth herein.

80.    Plaintiff brings this Count on behalf of himself and the Nationwide Class.

81.    As alleged above, Plaintiff and the Nationwide Class contracted with Defendants for the purchase and installation of PV Systems on their homes by executing the Residential Sales Agreement ("the Agreement").

82.    The form and substance of the contractual provisions for each Members' Residential Sales Agreement is substantively and materially identical.

83.    The Agreement is a valid contract between Plaintiff, the Class, and Defendants for the purchase and installation of solar energy PV Systems.

84.    The Agreement provided, among other things, that "[a]ll work performed by Vision Solar will be done in accordance with local, state and national electrical codes":[10]

> 9.   All work performed by Vision Solar will be done in accordance with local, state, and national electrical codes.

85.    The Agreement provided that Defendants would be responsible for obtaining all permits to install the PV systems:[11]

> 3.3.   Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein.

86.    Addendum A ("the Addendum") to the Agreement further provided that "Seller shall be responsible for conforming to all building, labor or fire

---

[10] *Vision Solar Residential Sales Agreement*, p. 1.
[11] *Id.*, pp. 3-4.

regulations and for obtaining any permits required by state or municipal law concerning the installation and operation of the subject system":[12]

> 9.1.8. Seller shall be responsible for conforming to all building, labor or fire regulations and for obtaining any permits required by state or municipal law concerning the installation and operation of the subject system. Furthermore, in the event that approval of the system by any governmental agency is required, Seller shall furnish to Purchaser, without additional charge, a completed set of plans and specifications for the system. Seller shall perform any additional services that may be required to enable Purchaser to obtain such approval and Purchaser shall pay the costs of labor and material and other expenses incurred in performing such additional work to Seller.

87.     The Agreement provided that the *mechanical* installation of the System would be "performed in a professional manner" and "exhibit good workmanship":[13]

> 2.1.1. The mechanical installation of your System will be performed in a professional manner and will exhibit good workmanship. Through a coordinated schedule and pre-established work scenario, Vision Solar will predict and prepare for the necessary manpower requirements and arrange on-site job activities accordingly.

88.     The Agreement provided that the *electrical* installation of the System would be "performed in a professional manner" and "exhibit good craftmanship":[14]

> 2.2.1. The electrical installation will be performed in a professional manner and will exhibit good craftsmanship. All wiring materials shall be new and have the highest quality for this type work. All conduits will be plumb and parallel and installed in a professional manner.

89.     In Addendum A ("the Addendum") to the Agreement, Defendants provided warranties for the installation:[15]

---

[12] *Addendum A,* p. 4.
[13] *Vision Solar Residential Sales Agreement,* p. 2.
[14] *Id.*
[15] *Addendum* A, p. 2.

6.2.  Your System and installation work are covered by the following limited warranties. These are the only express warranties made in connection with the system and installation work. Any other warranties, remedies and conditions, whether oral, written, statutory, express or implied (including any warranties of system performance or merchantability and fitness for purpose, and any warranties against latent or hidden defects) are expressly disclaimed. If such warranties cannot be disclaimed, Seller limits the duration of and remedies for such warranties to the durations and remedies described below.

| System & Workmanship | Under normal use and service conditions, the System will be free from defects in workmanship or defects in, or breakdown of, materials or components for a period of ten (10) years from the date of installation. Warranties offered by the manufacturer, and the remedies provided thereunder, with respect to those items identified on the PV Equipment List contained on page 1 of the Agreement are limited to those terms and conditions as provided by the product manufacturer. |
|---|---|

90.    In particular, the Addendum provided that "the System will be free from defects in workmanship…for a period of ten (10) years."

91.    To date, Plaintiff and the Class Members' systems have failed to operate and failed to produce solar energy, amounting to a clear breach of Defendants' contractual obligations.

92.    Plaintiff and Class Members were damaged because they have been deprived of the use of their systems and the energy production promised by Defendants.

93.    Plaintiff and Class Members have been forced to pay the full amount of their electric utility bills **and** their monthly loan payments for their PV systems while the systems are inoperable and not producing energy.

94.    Plaintiff and Members of the Class were damaged by Defendants' breaches of contract in amounts that will be demonstrated according to proof.

95.     Plaintiff and the Class demand judgment against Defendants and request compensatory damages and/or recission, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
### (Unjust Enrichment on behalf of the Nationwide Class)

96.     Plaintiff incorporates by reference all material facts in this Complaint as fully set forth herein.

97.     Plaintiff brings this Count on behalf of himself and the Nationwide Class.

98.     Plaintiff and Class Members conferred a benefit on Defendants by contracting with Defendants for the purchase and installation of PV systems.

99.     Defendants voluntarily accepted and retained the benefit conferred by Plaintiff and Class Members in the form of profits.

100.    The benefits that Defendants received and retained are unjust, and inequity has resulted.

101.    Defendants knowingly accepted the unjust benefits of their misconduct.

102.    It is inequitable and unconscionable for Defendants to retain those unjust benefits without paying value to Plaintiff and Class Members.

103.    As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiff and Class Members, in an amount to be proven at trial.

## COUNT III
### (Breach of Duty of Good Faith and Fair Dealing
### on behalf of the Nationwide Class)

104.   Plaintiff incorporates by reference all material facts in this Complaint as fully set forth herein.

105.   Plaintiff brings this Count on behalf of himself and the Nationwide Class.

106.   Every contract, including the Residential Sales Agreement, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time that the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

107. Defendants' conduct described herein, including the premature installation of solar panels prior to proper permitting applications, was made in bad faith for no purpose other than to create profit for Defendants at the expense of Class Members.

108.   As a result, Plaintiff and members of the Class are entitled to compensatory damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

## COUNT IV
### (Violation of New Jersey Consumer Fraud Act N.J.S.A. 56:8-1, *et seq.* on
### behalf of the National Class)

109.   Plaintiff incorporates by reference all material facts in this Complaint as fully set forth herein.

110.   Plaintiff brings this Count on behalf of himself and the Nationwide Class.

111.   Each Class Members' Residential Sales Agreement contains a choice of law provision stating that the Agreement "shall in all respects be governed and construed in accordance with the laws of the State of New Jersey."

112.   The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]" N.J. Stat. Ann. § 56:8-2.

113.   Pursuant to N.J.S.A. 56:8-19, any person who has suffered a loss because of a violation of the NJ CFA may bring an action to obtain a declaratory judgment that an act or practice violates the NJ CFA and to enjoin such person who has violated, is violating, or is otherwise likely to violate the NJ CFA.

114.   Pursuant to N.J.S.A. 56:8-19, any person who has suffered a loss because of a violation of the NJ CFA may bring an action for actual damages, treble damages, attorney's fees, and court costs.

115.   Defendant Vision Solar, through its conduct as described above, engaged in unlawful practices, methods, and acts of competition, deception, fraud, false pretense, false promise, misrepresentation, and the knowing concealment, suppression, or omission of material and foundational aspects of the sales and financing agreements in the conduct of its trade and commerce, including, but not limited to:

a.   Systematically misrepresenting the benefits of Solar Panel Systems and eligibility for tax credits;

b.   Training salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into sales agreements;

c.   Targeting vulnerable individuals and employing unfair tactics to obtain signatures;

d.   Failing to ensure proper installation, permits, and functionality of the solar panel systems;

e.   Collecting payment from financing companies before homeowners systems are connected and producing energy, and

26

f.   Ignoring homeowner complaints.

116.   Plaintiff and all Members of the Nationwide Class were aggrieved by Defendants' violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments.

117.   Plaintiff and Members of the Class entered into agreements with Vision Solar in reliance of Defendants' misrepresentations, omissions, concealments, and/or failures to disclose material facts. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiff and Members of the Class would not have agreed to purchase solar energy Systems from Defendants and would not have suffered significant out-of-pocket losses.

118.   Defendants' violations of the New Jersey CFA present a continuing risk to Plaintiff and the Class members.

119.   Plaintiff and the Class members seek an order enjoining Defendants' unfair and deceptive acts or practices and awarding actual and/or statutory damages, punitive damages, and along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action pursuant to one or more of the proposed Class, as they may be modified or amended, and respectfully requests that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Fed. R. Civ. P. 23, and issue an order certifying the Class as defined above;

B.     Appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.     Award damages, including compensatory damages, to Plaintiff and all other Class Members;

D.     Award Plaintiff and Class Members actual damages sustained;

E.     Award Plaintiff and Class Members such additional damages, over and above the amount of their actual damages, which are authorized and warranted by law;

F.     Grant restitution to Plaintiff and Class Members and require Defendants to disgorge inequitable gains;

G.     Award Plaintiff and Class Members their reasonable attorneys fees and reimbursement of all costs for the prosecution of this action; and

H.     Award such other relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  January 8, 2024

> /s/ Amy L. Judkins
> **AMY JUDKINS, ESQUIRE**
> Florida Bar No.: 125046
> **WILLIAM C. OURAND, ESQUIRE**
> Florida Bar No.: 92503
> NEWSOME MELTON
> 201South Orange Avenue, Suite 1500
> Orlando, Florida 32801
> Telephone: (407) 648-5977
> Facsimile: (407) 648-5282
> Attorney for Plaintiff
> ajudkins@newsomelaw.com
> bnagi@newsomelaw.com
> lusardi@newsomelaw.com
>
> /s/ Louis A. Gonzalez, Esq.
> **Louis A. Gonzalez, Esq.**
> Fla. Bar No.: 84213
> VARGAS GONZALEZ
> BALDWIN DELOMBARD, LLC
> 2745 West Fairbanks Ave.
> Winter Park, FL 32789
> Phone: (407) 603-7940
> Fax: (407) 603-7943
> louis@vargasgonzalez.com
>
> *Attorneys for Plaintiff and the Class*